OVERTON, Justice.
We have for consideration The Florida Bar’s petition requesting a mandatory continuing legal education requirement in the Integration Rule. We have jurisdiction. Art. V, § 15, Fla. Const.
This petition represents a further step in the educational requirements for Florida’s legal profession. In 1984, The Florida Bar’s long-range planning committee recommended a mandatory continuing legal education plan to the Board of Governors. In the summer of 1984, a poll, taken at the direction of the Board, indicated that 49.4 percent of The Florida Bar’s members looked favorably on some type of continuing legal education requirement, while 48.8 percent were opposed. The remaining 2 percent had no opinion. In September, 1984, the Board, by a 28-to-3 vote, appointed a task force, chaired by Tom Read, Dean of the University of Florida College of Law, to formulate a specific plan for mandatory continuing legal education. The task force submitted its plan to the Board of Governors in May, 1985. The Board approved the plan by a 17-to-16 vote. The plan was subsequently modified and a motion to rescind the Board of Governors' prior action was defeated 23-to-8. The plan finally approved by the Board of Governors is contained in Appendix A attached to this opinion.
Florida is not one of the first states to implement a mandatory continuing legal education program. The first was Minne *584 sota, which enacted a continuing legal education requirement for its lawyers in 1975. Since that time, twenty states, including the southern states of South Carolina, Georgia, Alabama, Mississippi, and Texas, have approved similar programs.
In 1978, Colorado approved a mandatory CLE program and four years later conducted a membership survey which indicated a 76 percent favorable response to the program. A formal study commission later concluded:
MCLE has a positive effect on lawyer competence even though it cannot be proven by either objective or scientific means. In every MCLE jurisdiction where lawyers’ responses have been sought, surveys indicate that they believe that MCLE does improve their competence as well as that of their fellow attorneys. An educational habit seems to have been created by MCLE that encourages lawyers to add to their legal knowledge. This positive feeling about MCLE is echoed by the young lawyers division of the American Bar Association which has proposed that MCLE be adopted in all jurisdictions. MCLE is increasingly being seen as a very positive program which improves lawyer competence.
ACLEA Program Materials, 1984 Annual Meeting p. 157.
The legal profession will not be Florida’s first profession or regulated occupation to have a mandatory continuing education requirement. Mandatory continuing education requirements have already been established in Florida for accountants, opticians, optometrists, dentists, dental hygienists, osteopaths, pharmacists, psychologists, veterinarians, medical doctors, physician assistants, nurses, nursing home administrators, podiatrists, chiropractors, funeral home directors, mental health counselors, social workers, and realtors.
The Bar directs our attention to the following comments of Dr. Lewis Phillips, a continuing education expert who believes these types of programs have very positive results:
(1) The professions have experienced increased attendance at meetings, especially when some educational component is included.
(2) More and better educational programs have become available.
(3) There is evidence of increased interest in the profession by professionals, many of whom have been professionally inactive.
(4) Professions have noticed increased respect from other professions, especially from their allied professions.
(5) Professional journals are giving increased attention to educational matters; new texts and learning materials have been developed; and commercial products firms have developed many new related educational materials.
(6) Self-assessment instruments are being developed.
(7) Standards for educational programs are being developed to insure quality programs through accreditation and program approval mechanisms.
(8) More appropriate alternatives to relicensure by continuing education are being sought by some professions.
(9) Members of a profession are forced out of “professional isolation” by the examination of new knowledge, skills, and interaction with colleagues.
Power and Conflict in Continuing Professional Education (M. Stern ed. 1980).
Those who have appeared in opposition to this proposed mandatory CLE program claim that present CLE programs lack substance and are so deficient that in certain instances they constitute a sham. We reject this argument because the quality of our continuing legal education programs, as they now exist, is not an issue in this proceeding. Our responsibility here is to determine whether the proposed mandatory CLE program will benefit the public by improving the competence of the legal profession.
This Court, in establishing an integrated bar, created a representative governing body to assist in supervising Florida’s legal profession and to develop programs that benefit the public and the profession *585 through improving the administration of justice. The Board of Governors, as that representative body, has developed and presented this mandatory CLE program. We recognize that reasonable people may differ with regard to the benefits this program will provide. We feel, however, that there is clearly a reasonable basis for the Board’s action and, consequently, it would be inappropriate to reject this program out of hand.
Although we approve in principle the proposed program, we find we should direct the following modifications before its implementation: (1) a separate mandatory judicial educational requirement should be established in the judicial administration rules for The Florida judiciary, administered by the Florida Court Education Council, rather than through the proposed Integration Rule; (2) the full-time federal judiciary should be exempt; (3) a special provision should be prepared relating to continuing education for full-time government lawyers; and (4) this entire plan should be reviewed by this Court three years from the date the program is implemented.
We request the Bar to appoint a special committee to work with a liaison member of this Court, designated by the Chief Justice, to draft the necessary modification provisions within sixty days. It is this Court’s intention that the proposed plan be implemented January 1, 1988.
It is so ordered.
EHRLICH, SHAW and BARKETT, JJ., and ADKINS, J. (Ret.), concur.
McDONALD, C.J., dissents.